## MESSER v FLOYD RICE FORD, INC.

Docket No. 77-4479. Submitted December 20, 1978, at Detroit.—Decided July 24, 1979. Leave to appeal applied for.

William and Lellewene Messer were both injured in an automobile accident. They brought an action against Floyd Rice Ford, Inc., from whom they had purchased their automobile, and Ford Motor Company, the manufacturer. They claimed that a defect in the automobile caused it to stall, with the result that Mr. Messer lost the ability to brake and to steer. The automobile left the road, and the Messers were injured. On the day of trial, the plaintiffs moved for leave to amend their complaint to add an allegation that defendants had failed to warn plaintiffs of the effects of a stall on braking and steering ability. The Wayne Circuit Court, James Montante, J., denied leave to amend. The case proceeded to trial, and after the close of proofs the trial court directed a verdict in favor of the defendants and entered a judgment accordingly. Plaintiffs appeal, alleging that the denial of their motion to amend their complaint was an abuse of discretion and that the court erred by directing a verdict for defendants and by denying a motion for disqualification of the trial judge. *Held:*

1. Denial of the motion to amend the complaint was not an abuse of discretion. The plaintiffs were attempting to introduce a new theory of liability into the case on the day of trial, some four years after the filing of the complaint. The trial court's ruling that to allow the amendment would unduly prejudice the defendants was not improper.

2. The plaintiffs adduced sufficient proof of a defect attributa-

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 61 Am Jur 2d, Pleading §§ 308-311.

What constitutes "prejudice" to party who objects to evidence outside issues made by pleadings so as to preclude amendment of pleadings under Rule 15(b) of Federal Rules of Civil Procedure. 20 ALR Fed 448.

Timeliness of amendments to pleadings made by leave of court under Federal Rules of Civil Procedure 15(a). 4 ALR Fed 123.

[5, 6, 8] 63 Am Jur 2d, Products Liability §§ 10, 11, 15, 22, 23.

[7] 63 Am Jur 2d, Products Liability §§ 89, 90.

ble to the manufacturer. However, they did not establish that this defect was the probable cause of the accident and the resulting injuries. Without a showing of this causal link between defect and injury, a directed verdict for defendants was proper.

3. The plaintiffs' allegations of prejudice against them on the part of the trial court, upon which they based their motion for disqualification, are unsubstantiated.

Affirmed.

1. PLEADING — AMENDMENT OF COMPLAINT — JUDGE'S DISCRETION — COURT RULES.

Leave to amend a complaint should be freely given when justice so requires; a trial court's discretion in this regard is limited by the principle that a motion to amend should be denied only for particular reasons such as undue delay, bad faith or a dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment (GCR 1963, 118.1).

2. PLEADING — AMENDMENT OF COMPLAINT — PREJUDICE — FAIR TRIAL.

Mere introduction of a new theory of recovery is generally not sufficient reason to deny a motion to amend a complaint, unless prejudice to the opposite party results; the prejudice envisioned by this rule is not that the amendment may ultimately cause the opposite party to lose, but that it may prevent the party from having a fair trial.

3. PLEADING — AMENDMENT OF COMPLAINT — EXPENSE — DISCOVERY.

Additional expense and time-consuming new discovery to meet new matters raised in a proffered amendment to a complaint are appropriate considerations for a trial court when considering the prejudice to the defendant should the amendment be allowed.

4. PLEADING — AMENDMENT OF COMPLAINT — DELAY — PREJUDICE.

Delay in seeking amendment to a complaint, absent a finding of bad faith or prejudice created by the delay, does not justify denial of a motion to amend; however, delay may be a major source of prejudice where the litigation has proceeded to a point where the opposing party cannot reasonably be expected to defend against the amendment.

5. PRODUCTS LIABILITY — DIRECTED VERDICT — INFERENCES — DEFECT.

The test to be applied in consideration of a motion for a directed verdict in a products liability case is whether it is reasonable to infer from the evidence, direct or circumstantial, that the accident was probably caused by a defect attributable to the manufacturer.

6. PRODUCTS LIABILITY — DEFECT — DEFECT ATTRIBUTABLE TO MANUFACTURER.

A plaintiff in a products liability case must establish 1) the existence of a defect and 2) a reasonable probability that the defect complained of is attributable to the manufacturer.

7. PRODUCTS LIABILITY — DEFECT — PROOF — SPECIFIC CAUSE.

A plaintiff in a products liability case, in order to meet the burden of proving a defect, is not required to isolate the specific cause of the defect.

8. PRODUCTS LIABILITY — NEGLIGENCE — DEFECT — INJURY — CAUSAL LINK.

The mere possibility that a defendant's negligence in a products liability case may have been the cause of an accident is not sufficient to establish a causal link between the defendant's negligence and the plaintiff's injury; the absence of a causal link between a defect in a product and a plaintiff's injury prevents the establishment of a case for submission to a jury, and a directed verdict for the defendant is proper.

*Lopatin, Miller, Bindes, Freedman & Bluestone* (by *Buell Doelle)*, for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *James R. Kohl* and *Christine D. Oldani)*, for Floyd Rice Ford, Inc.

*Harvey, Kruse & Westen, P.C.* (by *James N. Martin* and *James J. Williams)*, for Ford Motor Company.

Before: M. F. CAVANAGH, P.J., and BASHARA and ALLEN, JJ.

PER CURIAM. Plaintiffs, William and Lellewene Messer, were injured when their car allegedly

stalled while they were negotiating a sharp turn in an exit ramp. As a result, the plaintiffs claimed that Mr. Messer, the driver, lost the ability both to brake and steer the car, causing it to leave the road and roll down an embankment until Mr. Messer was finally able to bring the car to a halt. Both he and his wife suffered extensive injuries.

In October, 1973, plaintiffs filed a complaint against defendants Floyd Rice Ford, Inc., the seller of the car, and Ford Motor Company, the manufacturer. The complaint alleged as the cause of their injuries the defendant's breach of express and implied warranties, and breach of their duty of care to plaintiffs by delivering a product containing a defect in manufacture, assembly and preparation.

On the day of trial, four years after filing, plaintiffs' substituted counsel moved for leave to amend their complaint to add an allegation of defendants' failure to warn plaintiffs of the effects of stalling on power-assisted brakes and steering. The trial court denied leave to amend, on grounds of timeliness, prejudice to the defendant by delay, and interjection of a new theory of liability after defendants had proceeded through discovery and prepared for trial on warranty and manufacturing defect theories.

Plaintiffs and defendants proceeded to introduce their proofs. At the close of their cases, both defendants moved for a directed verdict, which the court initially denied. On the next scheduled day for hearing, plaintiffs moved for a mistrial and disqualification of the trial judge for prejudice. After denying this motion, the trial court reversed itself and directed a verdict in favor of both defendants.

Plaintiffs appeal from this adverse decision as of

right, arguing that the trial court abused its discretion by (1) denying their motion to amend their complaint, and (2) by excluding from evidence at trial representations allegedly made by one of the dealer's salesmen as to the effects of stalling on the car's braking and steering mechanisms. The plaintiffs further contend that the trial court erroneously directed a verdict for defendants as well as that the trial court erroneously denied their motion for the judge's disqualification for prejudice.

Where a plaintiff seeks leave to amend its complaint prior to trial, this leave is to "be freely given when justice so requires". GCR 1963, 118.1. Although the language of the rule commits this decision to the trial court's discretion, this discretion is limited by the principle that such motions should be denied only for particular reasons:

"* * * such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, * * *." *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973), citing *Foman v Davis,* 371 US 178; 83 S Ct 227; 9 L Ed 2d 222 (1962).

In its denial of plaintiffs' motion, the trial court primarily relied on the prejudice to defendants if the amendment were permitted. The court specified several sources for this prejudice—the unanticipated change in plaintiffs' theory of the case to one of failure to warn of a hazardous condition and the absence of expert witnesses to testify on this issue for defendant Ford—and took judicial notice of the four-year litigation history of the instant case and the delay in proffering the amendment. The basic issue on appeal is, there-

fore, whether in light of the record and the policy favoring amendment these reasons provided adequate grounds to support its ruling, or whether the denial constituted an abuse of discretion.

After reviewing the record in the case at bar, we are persuaded that the trial court did not abuse its discretion in denying plaintiffs' motion to amend. First, as the trial court noted, the plaintiffs attempted to introduce a new theory of liability into the case on the day of trial. Mere introduction of a new theory of recovery is generally not sufficient reason to deny a motion to amend, *Leahy v Henry Ford Hospital,* 84 Mich App 719; 271 NW2d 34 (1978), unless prejudice results to the opposite party. The prejudice envisioned is not that the amendment may ultimately cause the opposite party to lose, but that it may prevent the party from having a fair trial. *Ben P Fyke & Sons, supra,* at 657.

In the instant case, it appears that discovery commenced 2-1/2 years earlier and had been finally completed six months prior to trial. During discovery, defendants had focused solely on the existence and nature of the manufacturing, assembly or preparation defect in the Messers' automobile rather than upon defective or absent warnings as alleged in the proffered amendment. No information gleaned from discovery, either directly or indirectly, assisted preparation and avoided surprise at trial on the issue of failure to warn. Further discovery and expense thus appeared inevitable.

Numerous court decisions indicate that additional expense and time-consuming new discovery to meet new matters raised by a proffered amendment are appropriate considerations for a trial court in weighing prejudice to an opposite party

against the policy favoring amendments. *Ben P Fyke & Sons v Gunter Co, supra,* at 661, *Makuck v McMullin,* 87 Mich App 82, 87; 273 NW2d 595 (1978), *Wilson v Eubanks,* 36 Mich App 287; 193 NW2d 353 (1971), *lv den* 386 Mich 773 (1971); see also *Matarazzo v Friendly Ice Cream Corp,* 70 FRD 556 (ED NY, 1976). The trial court did not abuse its discretion by considering these factors in denying plaintiffs' motion.

The trial court also noted the four-year litigation history of the case at bar. Delay in seeking amendment, without a finding of bad faith or prejudice created by the delay, does not justify denial of a motion to amend. *Ben P Fyke & Sons v Gunter Co, supra,* at 663-664. Thus, amendments have been permitted even where a three-year hiatus existed between the initial filing and the amendment of the pleading. *Middle Atlantic Utilities Co v SMW Development Corp,* 392 F2d 380 (CA 2, 1968). Delay, however, can be a major source of prejudice to the party opposing an amendment where, as in the case at bar, the litigation has proceeded "to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial". *Ben P Fyke & Sons, supra,* at 663. We find thus no abuse of discretion by the trial court.

Plaintiff next contends that the trial court improperly directed a verdict for defendants at the close of all the proofs.

In *Holloway v General Motors Corp (On Rehearing),* 403 Mich 614, 622; 271 NW2d 777 (1978), the Supreme Court stated the proper test to be applied in cases similar to the one at bar, as follows:

"On a motion for directed verdict, the question is

whether it is reasonable to infer from the evidence, direct or circumstantial, that the accident was probably caused by a defect attributable to the manufacturer."

This test focuses on the essential elements of a plaintiff's case in a products liability action. The plaintiff must first establish the existence of a defect; to do so, he may show a demonstrable malfunction in a product, or behavior that contradicts the assumption that the product will serve a normal use without causing injury. *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708, 713; 202 NW2d 727 (1972), *lv den* 388 Mich 812 (1972). A plaintiff then must establish a reasonable probability, either by direct evidence or by inference from circumstantial evidence, that the defect complained of is attributable to the manufacturer. *Holloway v General Motors Corp, supra,* at 621; *Snider, supra,* at 715. In order to meet its burden of proving a defect, however, a plaintiff is not required to isolate its specific cause. *Holloway v General Motors Corp, supra,* at 627.

Applying these various tests to the case at bar, it is apparent that plaintiff has adduced sufficient proof of a defect attributable to the manufacturer. The stalling propensities of the Messer vehicle is clearly a demonstrable malfunction; stalling is behavior not expected in a passenger car and can be unreasonably dangerous if it occurs at the wrong time. The fact that the cause of the stalling remained unidentified does not negate the existence of a defect. Record evidence also existed to support the inference that the defect was attributable to the manufacturer. The Messers' car had a tendency to stall from the day of purchase. The dealership received it from Ford without making any mechanical alterations prior to delivery to the

customer and performed warranty work for constant stalling that was charged to Ford.

Notwithstanding proof of defect, it must also be reasonable to infer from the evidence that the defect "probably caused" the injury. Thus, "[t]he mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two". *Jordan v Whiting Corp,* 396 Mich 145, 151; 240 NW2d 468 (1976). The absence of this "probable" causal link between defect and injury prevents establishment of a jury submissible case. *Cassette v General Motors Corp,* 73 Mich App 225, 228; 251 NW2d 275 (1977), *lv den* 401 Mich 814 (1977).

After careful review of the record, we are persuaded that plaintiffs have failed to establish this requisite causal link. Plaintiff testified that he wasn't certain of the speed he was travelling and appeared to admit on cross-examination that his speed was between 30 and 35 mph.[1] For the pur-

---

[1] There is some confusion on the record on this point. Defense counsel, on cross-examination, read aloud statements made by plaintiff in his deposition concerning his speed at the time of the accident, as follows:

"Q (By Mr. Martin) On Page 77 of the deposition, the first question on the page, Mr. Messer, is as follows:

"Q I gather here at the scene of the accident you would be going at least 30, 35 miles an hour at that time when you tried to turn and applied brakes; would that be about right?

"A I wouldn't know but if I was to make an assumption I would say that that would be about it due to the three speed zones dropping down to 55 and 35 and then coming to this.

"Q You never had stalled out in that range of speed before?

"A No, no.'

"Do you remember that?

"A Yes.

"Q Was that a correct statement then, back in '74, when you made it?

"A To the best of my knowledge at that time, it was.

"Q Okay.

"THE COURT: And is that your testimony today?

"MR. MARTIN: Did you hear the judge ask you a question?

poses of argument, we will accept plaintiff's contention that he could not remember his speed, but that it was slower than 35 mph, the legal limit. As plaintiffs' expert testified, the speed of a stalled vehicle must drop below 20 to 27 mph before power assist is lost to the brakes and steering. Above the critical speed, the driver of a stalled car continues to have full use of his power brakes and steering, as long as the car remains in gear. However, even below the critical speed, with the car in gear, the driver of a stalled car possesses two or three applications of his brakes from his vacuum reserve, assuming the driver does not rapidly pump his brakes.

Mr. Messer testified on the day of the accident that he simply stepped on the brakes in order to slow down for the curve in the ramp and sensed complete resistance in the brakes to the pressure from his foot. He denied rapidly pumping the brakes, and did not put the car in neutral until after he attempted to brake. His description of his car's behavior is clearly inconsistent with the behavior to be expected if failure was due to stalling. According to his own expert's testimony, two or three applications of his brakes remained to bring the car to a halt. From the evidence adduced, it would be unreasonable to infer that the car's propensity to stall probably caused the accident. The directed verdict was therefore proper.

---

"THE COURT: Is that your testimony today? 'Yes' or 'No.'
"THE WITNESS: Yes."

It is ambiguous from the record whether plaintiff was in fact adopting his prior statement as true in response to the court's question, in contradiction to his previous testimony that he did not know how fast he had been travelling. Although the court apparently relied on the above exchange as a substantive admission by plaintiff in directing a verdict for defendants, the testimony's ambiguity prevents us from concluding the same. See McCormick, Evidence (2d ed), § 266, pp 636-639. However, as discussed in the body of the opinion, other facts in the record sufficiently support the trial court's grant of the directed verdict for defendants.

Given our disposition of this issue, we find it unnecessary to consider plaintiffs' contentions concerning representations made by one of defendant dealership's salesmen.

Finally, plaintiffs contend that the trial court improperly denied plaintiffs' motion for mistrial and disqualification. After examining the record, we find plaintiffs' allegations of prejudice against them on the part of the court to be unsubstantiated.

Affirmed. Costs to appellees.